TELEX, Inc., Appellant,

v.

Henry A. SCHAEFER, Appellee.

No. 15433.

United States Court of Appeals
Eighth Circuit.
April 19, 1956.

Donald J. Kelly, Minneapolis, Minn. (Kelly & LeFevere, Minneapolis, Minn., on the brief), for appellant.

James H. Geraghty, St. Paul, Minn. (Lipschultz, Altman, Geraghty & Mulally, St. Paul, Minn., on the brief), for appellee.

Before WOODROUGH and VAN OOSTERHOUT, Circuit Judges, and HULEN, District Judge.

HULEN, District Judge.

Appellant, as defendant, suffered an adverse judgment in the trial court for $26,945.52 based on a jury verdict, growing out of a claim of fraud in the sale by appellant of radio sets for use in hospitals to appellee. Appellant seeks reversal on the grounds—(1) the trial court erred in overruling its motion for a directed verdict, and (2) error in the instructions.

Appellee, a man 58 years of age, with some business experience, residing in Birmingham, Alabama, answered an ad in the Birmingham paper in which it was stated that a franchise was available for the operation of Telex pillow radios in the Birmingham hospitals, for someone with $13,320.00 to $26,850.00 to invest. The ad led appellee to see a Mr. Scott, the Telex representative, about September 22, 1953. Scott was a glib salesman. He recommended Telex radios highly and painted a picture of easy money in large quantities from their use by hospital patients. Definite profits were assured in relation to the number of radios and the hours in which they were available to hospital patients. Scott exhibited an agreement between certain hospitals in Birmingham and Telex, granting Telex permission to install the radios for a period of 260 weeks, in consideration for 25% of the gross income resulting from the patients putting coins in slots on the radios for short periods of use of the radios. The price of the radios to appellee, with an assignment of the agreement for installation in the hospitals, was $89.50 each. In the course of his investigation of the project appellee asked Scott to show him some of the radios in operation. Scott took appellee to Gainesville, Georgia, and there appellee saw some Telex radios installed in hospital rooms. Scott represented to appellee that the radios were operated by Ralph Davis and that he would arrange for appellee to meet Davis in Atlanta. Appellee went with Scott to Atlanta and there was introduced to a man who was represented to be the Davis who operated the radios that had been shown to appellee. Davis told of his successful operation of the Telex radios in the hospital and assured appellee that he had a great opportunity to make money if he signed the contract offered by Scott. By October 1st appellee had made up his mind. He went to see Scott at his hotel room in Birmingham. When he entered the room Scott was talking on the telephone to the vice-president of appellant and appellee was introduced over the telephone. Appellee told the vice-president over the telephone that he was going to close the deal with Scott. The vice-president assured appellee of the soundness of the proposition and expressed his pleasure about the sale of Telex radios to appellee. Scott and appellee signed the contract and the hospital contract was assigned to appellee. Appellee gave Scott his certified check for $27,839.87. Appellee thereafter received a letter from Mr. Hessey of Telex thanking him for his order of 302 radios. The letter stated that there would be a slight delay in shipment pending availability of a tem-

porary plastic speaker and explained that the factory was then working on the metal speaker, demonstrated by Scott, and that Telex would supply the metal speaker to appellee at no charge when available. This was the beginning of appellee's disillusionment, although it was some time before appellee felt its full impact. The radios arrived on October 29, 1953. They were installed by Scott in appellee's presence. Immediately complaints commenced. Defects in the radios of divers kinds were evident from the start. The first collections were a decided disappointment to appellee. On December 29, 1953, appellee wrote a letter to appellant which ended:

"I consider that you have breached the warranty, expressed and implied accompanying the sale of these radios to me and I hereby declare the sale rescinded and hereby offer to deliver the radios to you upon repayment of the purchase price."

Appellant replied at length, denying breach of warranty. The letter informed appellee:

"We're sorry, Mr. Schaefer, that your installation does not seem to be working out but we cannot agree with you that we have breached our warranty and that the sale can be rescinded. We have no intention of repaying any part of the purchase price. The product was in tested condition when delivered to you."

Appellee continued his efforts to make the radios operate to the satisfaction of the patients and the hospital, but without success. On March 30th, 1954, the hospital administration ordered them all removed.

On April 2nd, 1954, appellee learned for the first time that Scott had perpetrated a hoax, at Atlanta, in introducing Ralph Davis to him, as one who was then operating the Telex radios that had been shown to appellee in the hospital.

Appellee's claim in the complaint was for the purchase price and damages. It alleged breach of warranty in the radios failing to earn the amount represented and not being fit for the use intended, and false and fraudulent representation in the Ralph Davis deception.

Appellant answered by (1) denying Scott was its agent, (2) denying false representation, (3) claiming no contract was made between appellant and appellee because Scott was the representative of Globe Distributing Company, a sales company in which appellant had no interest, and (4) claiming that no timely demand for rescission was made.

Only the fraud issue was submitted to the jury. There was a verdict for appellee for the purchase price of the radios.

■ Since appellant took no exception to the Court's charge to the jury it is not now in a position to complain of its contents. Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 1953, 203 F.2d 859.

We pass to appellant's claim of error in denying its motion for a directed verdict at the close of the evidence.

Appellant contends there was no evidence of rescission for fraud and that timely rescission for fraud was a condition precedent to the sustaining of a verdict for the purchase price. Appellant would, in effect, confess that Scott committed fraud in his conversation with appellee concerning the prominence of Telex radios and their earning capacity, and therefore date the discovery of the fraud back to a time prior to the letter of December 29, 1953, by appellee to appellant. It then claims that appellee elected to rescind for breach of warranty and not for fraud, and that having made a selection of rescission for breach of warranty he was barred from rescinding for fraud.

Scott's representations, aside from the Davis incident, did not rise to the status of fraudulent representations but rather were of a puffing nature, expressing an opinion on future events. Appellant's letter to appellee of December 31, 1953, was an effort to allay appellee's suspicions. It assured appellee—

"Sorry to learn from yours of the 29th that you're dissatisfied with the

installation of Telex Hospital Radios at Birmingham Baptist Hospital.

"We'll answer your letter specifically, point by point. Mr. Scott stated the truth: * * *."

This long letter ended—

"We hope this comment answers your questions satisfactorily and that the suggestions we've made will be helpful in stepping up the yield from your investment. If we can be of any further service, feel free to call upon us and when you're next visiting St. Paul if you'll stop in, the writer would like to visit with you and show you the plant facilities whereof we speak.

"Very truly yours,

Telex, Inc.,

J. R. Hessey.

Hospital Radio Division"

Appellant complains that appellee's continued use of the machines after his early experiences constituted an election on appellee's part to retain the radios and was ratification of the sale. All that appellee did was what appellant urged him to do as evidenced by the letter of December 31st, 1953.

When on April 2nd, 1954, appellee learned of the deception practiced on him by appellant's agent Scott, he removed all radios from the hospital and placed them in storage. The hospital superintendent had made a request of appellee that he remove the radios a day or two before. Was appellee's attempted rescission delayed so long as to bar his action?

■ Appellee was excused from giving formal notice of rescission to appellant and from offering to return the property after learning of the Davis fraudulent representations because appellant had already informed appellee that Scott was not its agent, and that appellee did not make any purchase of it but had purchased from an independent sales corporation, and because appellant told appellee over its signature: "We have no intention of repaying any part of the purchase price." The law will not deny recovery for injury from fraud for failure of the victim to go through a useless formality. Taylor v. Mutual Ben. Health & Accident Ass'n, 8 Cir., 1943, 133 F.2d 279.

■ Even if there was evidence of knowledge by appellee of fraud at the time he asked for rescission on the ground of breach of warranty, waiver of rescission for fraud would not be a debatable issue on this appeal because of failure of appellant to plead it. Rule 8 (c), Federal Rules of Civil Procedure, 28 U.S.C.A.

■■ Appellee had a reasonable time to rescind the contract on discovery of the fraud by Scott. There is no fixed rule as to time. What is reasonable must vary with the facts of each case. Appellee entered into the Telex business with high hopes. He was loath to see his expectations shattered. It was a surprise to him when the radios failed to operate. Appellant assured him they would. The first receipts were low. But hope dies slowly. Appellee, urged by appellant, tried again and again to remedy the mechanical defects. It comes with poor grace for appellant now to urge that appellee should be denied a recovery for his patient efforts to make a success of the appellant's wares. But when appellee learned that Scott had perpetrated the Davis fraud there was no longer any hope of success. This bold deception went to the heart of the transaction and branded it as a fraud. All suspicions of appellee then became realities. This suit was filed August 23, 1954. We cannot say, considering the circumstances, that from April 2nd to August 23, 1954, was a delay sufficiently long, as a matter of law, to constitute a waiver and bar appellee from recovery for fraud. And we view as a complete answer to appellant's contention on this issue that appellant's defense of waiver, including the question whether appellee acted within a reasonable time, was submitted to the jury as an issue of fact. In the charge, to which no exception was taken, the Court said:

"A party defrauded must disaffirm the contract at the earliest practical moment after discovery of the alleged fraud. What is a reasonable time in which to rescind is a question of fact for you as a jury to determine."

We find no reversible error in this record. The judgment will be affirmed.