KINGSBURY BREWERIES COMPANY, Plaintiff,

v.

Harry SCHECHTER and Irving E. Schechter, d/b/a Superior Bottling Company, Superior Beverage Company and Superior Distributing Company, Defendants.

Civ. No. 2693.

United States District Court
D. Minnesota, Third Division.

June 25, 1956.

**220**

Loring M. Staples, of Faegre & Benson, Minneapolis, Minn., for plaintiff.

Roger S. Rutchick, St. Paul, Minn., for defendants.

DONOVAN, District Judge.

Plaintiff commenced action on an account stated. Defendants counterclaimed for breach of contract [1] and the only fact issues submitted to the jury had to do with the parol contract relied on by defendants. The jury returned a verdict for plaintiff. The matter is now before the Court on defendants' motion for a new trial.

The record is replete with contradictions in the testimony of the parties. It appears from the testimony of defendant

1. In plaintiff's case the parties stipulated the correctness of the account stated, less certain credits. The controversy has to do with the counterclaim, the pertinent parts of which read as follows:

"On or about October 29, 1952, plaintiff, through its agent and servant, Philip C. Engel, acting within the regular course and within the scope of his employment, enter into an oral agreement with the defendant, Irvine [Irving] E. Schechter, whereby defendant was to exclusively distribute Kingsbury beer and other products of the plaintiff to retail stores and outlets in Ramsey and Hennepin Counties, State of Minnesota; that said Philip C. Engel stated to defendant at said time that defendant would and could retain for himself the exclusive distributorship of said products in Ramsey and Hennepin Counties as long as said Philip C. Engel remained in the employ of Kingsbury Breweries Company and as long as defendant continued to do a good job.

\* \* \* \* \*

"The plaintiff, through its president King Cole and through its managing officers and agents, ratified the agreement above set forth and subsequent to October 29, 1952, and until September 30, 1954, sold to plaintiff for said distribution said products in accordance with said agreement.

\* \* \* \* \*

"On or about September 30, 1954, plaintiff notified the defendant that his distributorship was at an end and that another beverage company would henceforth handle said products in Ramsey and Hennepin Counties, Minnesota; said termination of plaintiff's services was without any cause or provocation on the part of defendant."

Irving E. Schechter that he was the only active defendant and the principal witness testifying to establish the contract pleaded in the counterclaim. His testimony describes how he had been in the bottling and beverage business for a long time prior to his contacts with plaintiff. He portrays himself to be an able, go-getting type of businessman and salesman wherever he operated, whether independently or under franchise for others. He became acquainted with Philip C. Engel (plaintiff's representative in Minnesota since July, 1952) in 1946, when the latter applied for employment with defendants. Following Engel's appointment as plaintiff's representative, and in October, 1952, Schechter continues, he was contacted by Engel in the latter's capacity as plaintiff's agent or sales manager and was invited by Engel to take on plaintiff's products as "exclusive distributor." Schechter told Engel he was "not interested" unless the proposed arrangement was in "writing." Thereupon, Schechter testified, Engel responded that he would take defendants' request for a written agreement "up with our president." A week later, Schechter said Engel returned with samples and prices. Freight haulage and territory were discussed. Schechter again asked for a written contract for "long duration", which he says was agreed to be "as long as the brewery was in business." Emphasizing what he said to Engel, Schechter testified, "I said 'under no circumstances would I take it [the distributorship] on without a written agreement.'" He [Engel] said, "We will give it to you in writing." That thereupon, without the written contract, Schechter gave Engel the first order for a load of plaintiff's beer, which was received on November 3, 1952.

Schechter went on to testify that his firm had their own trucks and salesmen, augmented by additions to haul plaintiff's products from its plant in Wisconsin to defendants' warehouse in St. Paul, Minnesota. Schechter testified that, from time to time he would inquire of plaintiff's president about the absence of a written contract[2], as for instance he says that on December 15, 1952, "I inquired about a written agreement" and president Cole answered, "They are getting it ready"; that this sort of inquiry and character of answer went on until June 9, 1953, when Schechter ordered Engel to "get my agreement." On the last date Schechter testified that, following receipt of Exhibit "H" (an order from National Tea Company of Hopkins, Minnesota), he telephoned plaintiff's president to "get the beer to me * * * assuring him [Cole] I would take 50,000 cases a year", and that thereupon Cole said, "You get that order and I will fill it." Schechter then said to Cole, "Where is my agreement?" and Cole answered, "Don't worry, I am the president" of Kingsbury Breweries Company, and that it would be mailed to Schechter. This is denied by Cole.

Schechter testified that his arrangement with plaintiff was "to pay load to load", but that he always paid when billed, rather than on the basis of load to load. Plaintiff's exhibits (statements and letters to defendants) show defendants' credit to be lapsed by past due billing. Disagreement between plaintiff and defendants was obviously in the making.

In the summer (August) of 1954, Schechter was pressing Engel for cooperation in getting him more territory and for the elimination of a competing distributor. Schechter testified Engel initiated steps to remove the competing

---

2. Defendants' Exhibit "E", dated November 5, 1952, a letter from plaintiff to Schechter quoting prices, added this:

"I sincerely hope that you will be able to obtain a wide distribution on our product. I know the quality is right and far superior to any other beer that is being offered to the trade at comparable prices."

Not a word was said of a written contract, and Schechter said he inquired about it again on November 6, 1952. It never materialized.

distributor, one Willard J. Chew, and Schechter advanced Engel $200 for vacation purposes. Upon Engel's return from a vacation Schechter drove to plaintiff's Wisconsin plant with him for the purpose of clarifying the distributorship, without avail. Following this, said Schechter, Cole, on September 1, 1954, made a personal call at "my office" whereupon Schechter said, "Where is my agreement?" and Cole replied, "You got an agreement. How about a check? [on a past due account]." Schechter gave Cole a check for a substantial amount. Later, in September, 1954, Cole telephoned, saying, "No more beer for you. You are no longer a distributor." [3]

The foregoing is the substance of defendants' case on the issue of the contract in suit.

Plaintiff's president, corroborated by Engel, denied a contract was entered into.

Defendants contend they have carried their burden of proof, intended to prove that a parol contract, making them the exclusive distributor of plaintiff's products in four Minnesota counties (although the counterclaim quoted in footnote 1 names but two counties), arose out of a meeting of minds in the manner

testified by Schechter for the duration described, and that plaintiff terminated the oral contract without good cause, to defendants' damage.

Plaintiff contends that it sold Kingsbury beer and other products at agreed prices to the defendants for distribution only in the territory assigned to them. That except for terms of payment to plaintiff, resale to the trade was to be as the defendants saw fit in the exercise of their judgment. That it was against the practice and policy of plaintiff to enter into contracts with distributors, and that in keeping therewith no contract, written or oral, was arrived at between plaintiff and defendants. Further, that Philip C. Engel had no authority, express, implied or otherwise, to make or negotiate contracts on behalf of plaintiff.

The foregoing is the gist of the evidence and issues of the instant case.

*1. Is the verdict contrary to the evidence?*

■■  The jury were told by appropriate instructions to find the facts, and in so doing, they were the sole judges thereof. The existence or nonexistence of facts going to establish or disprove the counterclaim was the sole responsibil-

---

3. Defendants' Exhibit "N", confirmatory of termination, is a letter reading as follows:

"September 30, 1954

"Mr. Irv Schechter
"Superior Beer Dist. Company
"135 Eaton Ave.
"St. Paul, Minnesota

"Dear Irv:

"Confirming my phone conversation with you today, this is to advise that effective immediately, we are dispensing with your services as a distributor for our products.

"You have indicated in the past, that it was impossible for you to co-operate with our representative, Mr. Engel, or with us in that territory. You have refused to do certain things which you were asked to do in promoting sales in the area where you have been selling, and have refused to co-operate when you were asked to refrain from certain prac-

tices, which were requested by our representative and ourselves because we felt that it was to the best interests of our product.

"During the past few months, we have been subjected to embarrassment through the constant bickering and chiseling that has been going on between yourself and one of our other distributors in that section. This can't help but have a damaging influence on the sale and promotion of our products in that section, so we have arrived at the decision that we would arrange for new representation where we can exercise better control of our sales and promotion in that area.

"Yours very truly,
"Kingsbury Breweries Company
"[signed] King Cole
"D Cole/cw
President"

ity of the jury.[4] Absent the written agreement Schechter repetitiously testified he sought, it became the duty of the jury to consider the contentions and conflicting evidence of the parties and to sift the true from the false in finding the facts.

■ The verdict returned for plaintiff on the counterclaim requires the Court to view the evidence in a light most favorable to the plaintiff. The jury having found the facts in its favor on the defendants' counterclaim, the trial court must accept as true all facts which the evidence reasonably tended to prove, and plaintiff is entitled to all favorable inferences that may be reasonably drawn therefrom.

The existence or nonexistence of the contract, which Schechter concedes was not reduced to writing, was a question of fact for the jury. Likewise, the existence or nonexistence of Engel's authority to enter into a contract was a jury question.[5] The evidence was not such as to compel a verdict for defendants.[6] I am

---

4. The Court's charge included the following:

"You are the sole and exclusive judges of the credibility of all the witnesses, and it is for you to say who should be believed and to what extent. In determining those questions, you may, among other tests, observe the demeanor of the witnesses upon the stand, their candor or lack of candor, their manner of testifying, whether direct or evasive, whether straightforward or shifty, their age and experience, and the reasonableness or unreasonableness of their story when viewed in the light of the facts in the case which are admitted or proved by uncontroverted testimony, and when also viewed in the light of your own judgment as people of experience and affairs.

"You may also consider any testimony as to inconsistent statements or admissions made by any of the witnesses upon the stand or upon other occasions. You may also take into consideration the power and ability of the several witnesses to observe what happened at the time and place in question, and to remember what happened and to relate correctly what happened and what they remembered. You may also consider any interest that a witness has or appears to have in the outcome of the action.

"If you should find that any witness here upon this trial has knowingly and wilfully testified falsely as to any material fact in the case, you are at liberty to totally disregard the testimony of that witness except so far as it may be corroborated by other credible evidence in the case.

\* \* \* \* \*

"In the event that you find that the contract contended for by defendants was not entered into by the parties, or if you find it was entered into but was terminable by will of either party thereto, that ends defendants' counterclaim and you will return a verdict for the plaintiff in the sum indicated by the Court and as it will direct.

"If you find that a contract was entered into by the parties for a term beyond September 30, 1954, and was not terminable at will and was wrongfully terminated, you will then determine the amount of damages defendants sustained, in which event you will consider the evidence bearing thereon.

"In that connection, if you find for the defendants, you may find that they are entitled to the profits that they may have sustained in the future, because there is no proof in this case of any past profits up to the time that this takes effect and that they would have realized if the plaintiff had performed its part of the agreement.

"In assessing damages, you may consider the reasonable expectancy of the defendants in doing business after the breach of the agreement, as claimed by them here, and based on their actual previous experience and on the reasonable expectancy of the amount of business they would do in the future."

5. In this connection, and in addition to the charge relating to express and apparent authority of an agent, the Court told the jury:

"As to whether this contract, which is oral, was, as claimed by the defendants, entered into by the plaintiff with them, I express no opinion. As to whether Philip C. Engel had authority to do anything in connection therewith I express no opinion. Those two questions of fact are for you to determine."

6. Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257, 259, 261, 19 A.L.R.2d 1248; Telex, Inc., v. Schaefer, 8 Cir., 233 F.2d 259.

of the opinion the verdict is sustained by substantial evidence.

### 2. Is the verdict contrary to law?

Whether the oral contract contended for by defendants was one of agency or sales is not important here. The sales feature is undisputed, but was not overlooked in any respect in the Court's attempt to correspond with defendants' theory as pleaded and pursued at trial. Defendants demonstrated they were willing to buy and pay for plaintiff's product. They did just that. The important problem, from their standpoint, was to convince the jury, as argued by their counsel to the jury and again in support of the motion for a new trial, that under the facts of the instant case they had proved the existence, in the words of counsel, of "a mutually enforcible contract between the parties." [7]

The points at issue, significant from the posture of fact and law, are these; (1) Was there a meeting of minds to such an extent as to give rise to a contract? (2) If a contract was consummated, is it definite as to duration? (3) If not sufficiently definite or mutual as to parties, under what circumstances could it be terminated?

The instant case is close as to definiteness and mutuality.[8] The contract must be for a definite term.[9] As I view the instant case, it is more like a sales agency agreement, terminable at will, and for that reason it is not controlled by the cases cited by defendants.[10] The controlling feature of the instant case is the first question posed in defendants' trial brief, i. e., "Under the facts presented here * * * was there a legally enforcible contract between the parties, or was it void for lack of mutuality?" It must be conceded that if defendants could successfully establish a legally enforcible contract, it was essential to its validity that its obligations should be mutual as to both parties. It is significant that there is nothing in the record to indicate necessity on the part of defendants to give orders in stipulated amounts or if they desired to discontinue such orders why they should not do so without liability to plaintiff for breach of contract.[11]

In my opinion the verdict is not contrary to law.

7. Defendants cite: Newhall v. Journal Printing Co., 105 Minn. 44, 117 N.W. 228, 20 L.R.A.,N.S., 899; contra, Bailey v. Austrian, 19 Minn. 535; Tarbox v. Gotzian, 20 Minn. 139.

 See also: Marrinan Medical Supply, Inc., v. Fort Dodge Serum Co., 8 Cir., 47 F.2d 458; Falstaff Brewing Corp. v. Iowa Fruit & Produce Co., 8 Cir., 112 F.2d 101; Bendix Home Appliances, Inc., v. Radio Accessories Co., 8 Cir., 129 F.2d 177.

8. The Court charged the jury in this respect as follows:
 "If you find that the plaintiff and defendants entered into a contract for a term of definite duration, then your problem will be to determine whether plaintiff has good cause to terminate that contract, and if not, what damage has been proved as sustained by the defendants.
 *       *       *       *       *

"A complete oral contract can only result where there is a meeting of the minds of the contracting parties; that is, they must agree to the same things at the same time. There must be an offer on one side, which is accepted and agreed to upon the other side."

9. As in the Marrinan case, supra, 47 F.2d 458.

10. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 228, 229, 89 A.L.R. 238.

11. See: A. Santaella & Co. v. Otto F. Lange Co., 8 Cir., 155 F. 719, and cited by Judge John B. Sanborn in Du Pont De Nemours & Co. v. Claiborne-Reno, supra, 64 F.2d at page 229.

 See also: Jacob Schmidt Brewing Co. v. Minot Beverage Co., D.C., 93 F.Supp. 994.

### 3. Is prejudicial error present?

A good part of defendants' complaint of error has to do with four interrogatories submitted to the jury.[12] This was consistent with the Court's sound discretion. It is convincing, however, of the caution to be exercised in attempts by the Court to satisfy the whim of counsel with reference to requests to charge and interrogate the jury, when the Court's general charge adequately covers the issues and law.[13]

Requests to charge the jury, when submitted, should be ready for trial purposes at the time the parties rest. The instant case was ready for submission to the jury a day previous to the charge. After an overnight recess and when court had resumed, defendants had not as yet tendered their requests to charge the jury. While counsel was advising the Court that the requests were still "in the typewriter and they will be brought over shortly", it was suggested that counsel dictate them to the reporter. He was engaged in doing this when the belated requests arrived.[14] The Court took the time to read, discuss and rule upon the requests, saying: "Where these requests are not in the hands of the Court prior to this time, we are not supposed to consider them at all. * * * I will have to study these while you are arguing" to the jury.

The Court had prepared its charge to the jury and adopted such requests of the defendants as were consistent with the theory of the trial and the applicable law. As given, the instructions fairly and adequately covered the material issues, even though the eleventh hour requests may have been correct statements of defendants' version of the law.

The Court being satisfied that no prejudicial error exists, and for the reasons hereinbefore set forth, the motion of defendants for a new trial must be denied.

---

12. Defendants cite no authority other than Rule 49(b), 28 U.S.C.A.

13. Chicago, Rock Island & Pacific Railroad Co. v. Emery, 8 Cir., 233 F.2d 848.

---

14. This loose type of practice is contrary to the intent and purpose of Rule 51, 28 U.S.C.A.