UNITED STATES of America,
Plaintiff,

v.

George C. LANDSVERK, also known as
Geo. C. Landsverk, and A. A. Habe-
dank, Defendants.

Civ. No. 1140.

United States District Court
D. Minnesota, Sixth Division.

Sept. 11, 1956.

George E. MacKinnon, U. S. Atty., and
Kenneth G. Owens, Asst. U. S. Atty., St.
Paul, Minn., for plaintiff.

Rosengren, Rufer & Blatti, Chest-
er G. Rosengren, Fergus Falls, Minn.,
for defendants.

DONOVAN, District Judge.

Plaintiff has moved for summary
judgment. The motion is based on the
pleadings, interrogatories and support-
ing affidavits, and movant contends there
is no genuine issue as to any material
fact for trial.

The file discloses that on or about De-
cember 18, 1953, defendants obtained a
1953 rye price support loan, made avail-
able by the Commodity Credit Corpora-
tion, through the Ada National Bank, of
Ada, Minnesota. That in connection
therewith defendants executed a produc-
er's note and supplemental loan agree-
ment, and to secure payment they execut-
ed and delivered a chattel mortgage cov-
ering 2,531 bushels of No. 3 rye, stored
in two bins on defendants' farm. That
on April 30, 1954, the Commodity Credit
Corporation became the owner in due

course of said note and chattel mortgage, and pursuant thereto on June 10, 1954, the Mahnomen County Agricultural Stabilization and Conservation Committee mailed a delivery notice to defendants, requiring them to deliver said rye to either elevator in Mahnomen, Minnesota, on June 15, 1954. That defendants delivered 467.50 bushels and advised the rest had been stolen. That on or about September 23, 1954, said County Committee advised defendants "to make settlement for the rye that has been disposed of, and we will reseal the balance." That defendants, some time thereafter, requested investigation by the Sheriff of said County, and also independently investigated the claimed theft and kept the Committee advised. On November 26, 1954, the Committee directed defendants to "contact the Sheriff to investigate and provide [the Committee] with definite proof that the grain was stolen." Defendants and the said Sheriff's office were unable "to locate or apprehend any person or persons who had stolen the rye."

Plaintiff contends the investigation of the loss of the rye indicates "that the rye was ground and mixed with other grains and used for feed." That "immediate notice of such loss or damage and [confirmation of] such notice in writing" as provided in the controlling agreement, was not given.[1]

Defendants contend that the plaintiff had actual knowledge of the alleged theft under auspices of their local and Washington offices,. and that formal notice in writing was waived by reason of an investigation carried on in behalf of the Commodity Credit Corporation. If acknowledgment of the verbal notice of the loss by the Mahnomen County Committee does not suffice, then, argue defendants, active investigation leading to confirmation of the theft constitutes all that could be accomplished by "notice in writing."

The nub of the controversy now before the Court is the claim of plaintiff that the producer-defendants were required to strictly comply with the supplemental agreement requiring that they give "the County Committee immediate notice of such loss or damage and * * * confirm such notice in writing."

The only possible escape from liability on the part of defendants is their argument that plaintiff was acting in its proprietary capacity, as opposed to its governmental capacity. That it was doing business in the field of commerce, and in doing so voluntarily shed its protective shield of sovereignty and, attired in the garb of a proprietary litigant, became subject to laws governing individuals.[2]

The file of the instant case shows that in answer to an inquiry on behalf of defendants, plaintiff placed its claim in the hands of counsel for collection.[3] Ordinarily, the law will not de-

---

1. Paragraph 6(e) (iii) of the agreement is the basis of defendants' claim that the theft was by "external cause" and the proviso of the same paragraph is the basis of plaintiff's allegation that notice of the loss had to be "immediate * * and confirmed * * * in writing." This is conceded by defendants, who rely on waiver.

2. Defendants cite: Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237; Goodman v. Niblack, 102 U.S. 556, 26 L.Ed. 229; England National Bank v. United States, 8 Cir., 282 F. 121.
   Plaintiff cites: Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; Scaife v. Federal Crop Ins. Corp., 8 Cir., 167 F.2d 152; United States v. Feldman, D.C.Neb., 93 F.Supp. 980.

3. By letter dated December 13, 1955, plaintiff's Acting Director of the Commodity Stabilization Service, Grain Division, advised in this matter as follows:
   "In the instant case, the borrowers delivered only approximately 455 bushels of the 2,531 bushels placed under loan. The borrowers' explanation for the shortage was that the rye had apparently been stolen by unknown persons. However, neither investigators of this Department nor the Sheriff of Mahnomen County were able to find any evidence indicating a theft of the rye. On the other hand, there was indication that the rye was ground and mixed with other grains and used for feed.
   "Under the circumstances, this Department had no alternative but to submit

ny relief to one for failure to go through useless formality.[4] With a nongovernmental party to an action that would be the law applied under appropriate circumstances. Can it be held, on the showing of the instant case record, that plaintiff was acting in a proprietary capacity to the extent that confirmatory notice in writing of the loss was a "useless formality", or waived?

The answer of the controlling cases is this:

"Whatever the form in which the government functions, anyone entering into an arrangement with the government takes the risk of having accurately ascertained that he who purports to act for the government stays within the bounds of his authority. * * * And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. * * * Just as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents."[5]

The Department of Agriculture Regulations which governed the making of the 1953 price support loans, published in 18 Federal Register, 1960, contained the identical language as Section 6(e) (iii) of said agreement. The proviso in question is clear and unambiguous.

The field of a motion for summary judgment is narrow and exacting. If the record suggests the possibility of a genuine issue of fact, the motion should be resolved against movant, who has the burden of proving the absence of said fact issue.[6] The instant case record convinces me that a jury trial involving sug-

gested conversion, as well as loss and damage, would result in no good to defendants, and would involve much useless expense and loss of time by court, counsel and litigants because of the lack of a genuine issue of fact.

The Court holds there is no genuine issue of fact disclosed by the file and record of the instant case. The motion for summary judgment in favor of plaintiff is therefore granted.

Defendants may have an exception.

the matter to the Department of Justice for appropriate action."

4. Telex, Inc., v. Schaefer, 8 Cir., 233 F.2d 259, 262.

5. Federal Crop Ins. Corp. v. Merrill, supra, 332 U.S. 380, 384, 385, 68 S.Ct. 1.

6. Caylor v. Virden, 8 Cir., 217 F.2d 739; Union Transfer Company v. Riss & Company, 8 Cir., 218 F.2d 553; Johnson Farm Equipment Company v. Cook, 8 Cir., 230 F.2d 119.