**Nels NORDIN, Appellant,**

v.

**Robert Irving ZIMMER, Appellee.**

**No. 138.**

Supreme Court of Alaska.

Aug. 7, 1962.

Eugene V. Miller and Eugene R. Belland, Fairbanks, for appellant.

---

Henry J. Camarot of McNealy, Merdes & Camarot, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

The principal question upon this appeal is whether the negotiations between the parties culminated in a binding contract and, if so, whether the contract was oral or written.

Robert Irving Zimmer, as plaintiff below, complained that all of his rights and interests in certain materials, equipment, furniture and a liquor license in the El Rancho Motel near Fairbanks were purchased from him by the defendant Nels Nordin on October 19, 1957 for $5,001, of which amount $1,614.70 had been paid, leaving a balance of $3,386.30 due and owing. The defendant answered the complaint denying any indebtedness. He also alleged affirmatively that he never entered into any contract or agreement with the plaintiff and that the only transaction he had in the matter involved just the liquor license and was with one Miles Beaux who represented himself to be the owner of the license.

The trial was to the court without a jury and the evidence introduced was considerable. Most of it related to the acts and declarations of the parties and Beaux, and tended either to establish or refute the existence of a contract:

The plaintiff contends and presented evidence below to the effect that the business deal described in the complaint was expressed in an oral contract entered into by himself and defendant Nordin on October 19, 1957. As documentary confirmation of the oral contract he introduced the following written instrument initialed "N. N." by Nels Nordin and bearing the signatures of the plaintiff and Beaux, which we shall refer to hereafter as Exhibit A:

"Received ($1614/70) Sixteen hundred fourteen 70/100 and delivering

Bill of Sale dated Oct. 19th 1957 including a license for premises described in Bill of Sale.

"Balance $3386/30 to be paid upon disposal and sale of property known as El Rancho.

"/s/ R. Zimmer
"/s/ Miles Beaux

"Copy & Receipt delivered     N.N.     Oct 19th—1957" [1]

The defendant insisted at the trial and again in his brief on appeal that the parties never did enter into a binding contract, either oral or written, for the sale to the defendant of the plaintiff's interest in the property in question. The only testimony produced by the defendant in support of his position was his own. As an adverse witness called by the plaintiff and later on direct examination the defendant Nordin stated that all of his dealings on October 19, 1957 concerning the El Rancho Motel were with its owner, Miles Beaux, and not with the plaintiff; that he did not purchase any furniture, fixtures or equipment from the plaintiff, as he already owned the fixtures in the motel, except for certain redemption rights of Beaux therein, and he was not interested in purchasing the plaintiff's furniture and equipment there because it was worthless; and that he did purchase Beaux's motel liquor license and paid him $1000 in cash therefor to secure its delivery and to release any claims of the plaintiff against the license or Mr. Beaux.

The defendant further testified that Exhibit A was nothing more than a receipt for the $1000 paid by him to Beaux for the liquor license and $614.70 previously paid by him to or on behalf of Mr. Beaux for utility and cesspool expenditures incurred on the El Rancho Motel; that any agreement as to payment of the further sum of $3,386.30 upon the sale of the El Rancho, as set forth in Exhibit A, was an agreement between Beaux and Zimmer, to which the

1. At the right hand margin of Exhibit A appeared the following notation: "I compared and prepared receipts and delivered original to Nels Nordin [Signed] L. Dworkin."

defendant was not a party and which he refused to sign; that the defendant and Beaux had on repeated occasions tried to sell the motel; that he had agreed to give Beaux any proceeds of sale over and above what he, the defendant, had invested [2] in the motel and had owing to him from Beaux, a total of about $22,000; that he was willing to credit the sum of $3,386.30 against what Beaux owed him if a sale of the El Rancho did not yield a price sufficient to cover defendant's investment in the motel and Beaux's indebtedness to him; and that in 1958 the defendant sold and transferred by quitclaim deed all of his right, title and interest in the motel to a Roger and Marguerite Gull for $15,500, a sum less than the defendant's investment in El Rancho and his claims against Beaux.

Eighteen months before the trial the plaintiff examined the defendant on deposition in connection with this case and elicited the following testimony as to some of the things which occurred on the day and night of October 19, 1957:

"Q What was this, Mr. Nordin? You say Mr. Zimmer and Mr. Beaux were both up with you and Mr. Miller [Nordin's attorney]?

"A That's right.

"Q And discussing this same deal?

"A Discussing this same deal * * [sic]' the $1,000.00.

"Q What happened?

"A Miller told me not to pay anything. Then they came to me in the middle of the night half-crying

"Q As a matter of fact, did a difference creep up whereby Miles Beaux got a little bit upset about something and Mr. Beaux and Mr. Zimmer both left?

"A He came here, and *Bob* [Robert Zimmer, the plaintiff] *says* he got his family Outside [Alaska] and he wants to go see them. 'Give me a thousand dollars, and I will sign everything over to you,' and that is it." [Emphasis and matter in brackets supplied.]

When asked at .the trial to explain why he had stated in the deposition proceedings that it was Mr. Zimmer who said that he would sign everything over for $1,000, the defendant replied: "I don't know. I don't recall that. But they both came there, and as far as I know Miles asked me that."

Two witnesses who were working for the defendant at the time, heard the plaintiff ask the defendant for money owed him on the El Rancho and they heard the defendant answer that he did not have the money at the time because he had to use it for bonding. This occurred in March or April of 1958 or 1959, according to their testimony. About a week later one of these witnesses heard the plaintiff again ask the defendant for money on the motel and on this occasion the defendant merely replied "that his money was tied up right at the time."

The plaintiff and his wife also testified concerning the several occasions after October 19, 1957 on which they asked for the money they claimed to be due from defendant and always he replied that he had his money tied up or that he would pay when he

2. The defendant's investment in the El Rancho Motel seems to have come about in the following manner: In 1955 he talked to Miles Beaux, the owner of the motel, with the idea of buying into the establishment. So he proceeded to purchase the materials needed to construct a 30' x 40' addition to the existing structure. This cost him approximately $6,000. To secure himself he filed a lien on the motel but this was allowed to lapse without foreclosure. The plaintiff Zimmer did most of the labor for Beaux on the addi-

tion and remodeling of the bar in the motel and received in payment for the $2,000 earned an assignment in July 1955 from Beaux of all bar fixtures, cafe counters, kitchen equipment, etc. The following year another of Beaux's creditors purchased the El Rancho at a "Marshal's Sale" in connection with the judicial foreclosure of certain tax and materialman's liens against the property. To protect his own interests in the motel, the defendant bought up the "Marshal's Sale" title for "between $8,000.00 and $9,000.00"

could or when he sold the motel, but he never denied his obligation until just a short time before the plaintiff filed this suit. The court found for the plaintiff and entered judgment accordingly.

■ We shall consider first the third point raised by the defendant on this appeal, namely, that the trial court erred in finding an oral contract between the parties whereunder there is due and owing to the plaintiff the sum of $3,386.30.

We quote at length from the court's findings of fact which we consider to be quite comprehensive:

"I.

"That an oral contract was entered into by and between ROBERT IRVING ZIMMER and NELS NORDIN, on 10 October, 1957, wherein NELS NORDIN, having knowledge of the right, title and interest of ROBERT IRVING ZIMMER, agreed to pay the said ROBERT IRVING ZIMMER the total sum of $5,001.00 for all said ROBERT IRVING ZIMMER'S (1) right, title and interest in certain equipment, materials and furniture, and (2) his interest in a liquor license, each and all of which were located on and/or in the El Rancho Motel, Richardson Highway, Fairbanks, Alaska.

"II.

"That on 19 October, 1957, Nels Nordin, the defendant herein, paid the sum of $1,000.00 to ROBERT IRVING ZIMMER, the plaintiff, and was given an additional credit of $614.-70 by the said ROBERT IRVING ZIMMER, leaving a net balance of $3,386.30 owed by NELS NORDIN,. the defendant, to ROBERT IRVING ZIMMER, the plaintiff.

"III.

"That at the time the parties entered the said oral agreement, the plaintiff surrendered all his right, title and interest in that certain equipment, mate-rial and furniture, and in addition thereto, his interest in a then current Alaska Beverage Dispensary Liquor License, each and all of which were located on and/or in the El Rancho Motel, Richardson Highway, Fairbanks, Alaska.

"IV.

"That a condition to the payment of the balance of $3,386.30 by the defendant to the plaintiff was that the defendant sell the El Rancho Motel, which the defendant indicated it was his intention to do at the time the oral agreement was entered into.

"V.

"That the oral agreement between the parties was further evidenced in part by a written receipt reading as follows:

[Exhibit A is here set out in full.]

"VI.

"That on or about the 19th day of December, 1958, Nels Nordin, the Defendant, completed the sale of the El Rancho Motel to Roger and Marguerite Gull for the sum of $15,500.00.

"VII.

"That repeated demands for the sum of $3,386.30 were thereafter made of the defendant, NELS NORDIN, by the plaintiff, ROBERT IRVING ZIMMER, but the defendant then refused and still refuses to pay the said sum.

\*       \*       \*       \*       \*       \*

"IX.

"The defendant, NELS NORDIN, is indebted to the plaintiff, ROBERT IRVING ZIMMER, in the sum of $3,-386.70 [sic] \* \* \*."

Our study of the record convinces us that the foregoing findings of the trial court truly present the basic and ultimate facts of the case and support the conclusions of law and judgment based thereon.

■ Where the existence of an oral contract and the terms thereof are the points

in issue, as here, and the evidence is conflicting, it is for the trier of the facts to determine whether the contract did in fact exist and the terms thereof if there was a contract.[3] In this case the court as such trier of the facts and with every opportunity to judge the credibility of all the witnesses, found the existence of an oral contract and the terms of that contract. Under Civ.R. 52(a)[4] we are bound by those findings unless they are clearly erroneous.[5] We do not find them to be clearly erroneous.

■ Holding as we do that the trial court did not err in finding that the parties had entered into an oral contract, we need to comment but briefly upon the defendant's specification that the court erred in admitting parol evidence to vary a written agreement. This specification of error was premised upon the defendant's contention that plaintiff's Exhibit A constituted more than a receipt and was in fact and in law the written embodiment of a contract. The trial court found to the contrary and we think rightly so.

That brings us to the only other error charged by the defendant, namely, that the court erred in denying his motion to dismiss the action for nonjoinder of an indispensable party, Miles Beaux. The defendant argues that Beaux and the plaintiff were joint obligees as evidenced by the fact that they both signed plaintiff's Exhibit A and, therefore, Beaux should have been joined as an indispensable party.

■ Joint obligees are indispensable parties to an action between themselves and the obligor to enforce contract rights.[6] But whether the motion to dismiss this action for the non-joinder of Beaux as an indispensable party should have been granted involves more than a mere declaration that Beaux and the plaintiff were joint obligees and that as a joint obligee Beaux should have been joined. It must first be shown that Beaux actually was a joint obligee with the plaintiff to receive $3,386.-30 from the defendant.[7] The mandatory duty under Civ.R. 19(a) to order other parties brought in[8] is shown only when the trial court finds or the record indisputably discloses that such parties are indispensable to a complete determination of the controversy.

The trial court found specifically:

"X.

"That Miles Beaux was not a party to the agreement entered into between the parties and therefore was not an indispensable party to the suit."

In our opinion this finding of fact is amply supported by the evidence and cannot be said to be clearly erroneous.

The judgment is affirmed.

3. See Kingsbury Breweries Co. v. Schechter, 142 F.Supp. 219, 222–224 (D.Minn. 1956); International Glass Co. v. Krouse, 282 F. 206 (3d Cir. 1922); Stancliffe v. Corn, 166 Or. 672, 114 P.2d 1014, 1017 (1941).

4. One of the provisions of Civ.R. 52(a) is that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

5. Link v. Patrick, 367 P.2d 157 (Alaska 1961); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962); Awes v. Walker, 370 P.2d 187 (Alaska 1962); Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791 (Alaska 1962).

6. Fremon v. W. A. Sheaffer Pen Co., 111 F.Supp. 39, 49–51 (S.D.Iowa 1953), aff'd 209 F.2d 627 (8th Cir. 1954); National City Bank v. Harbin Electric Joint-Stock Co., 28 F.2d 468 (9th Cir. 1928).

7. See First Nat. Trust & Sav. Bank v. Superior Court, 19 Cal.2d 409, 121 P.2d 729, 731 (1942). This case concerned joint beneficiaries of a trust.

8. The duty of the courts in Alaska to bring in indispensable parties is made mandatory by Civ.R. 19(a) the first sentence of which reads: "Subject to the provisions of Rule 23 and of subdivision (b) of this rule, persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants."