Eva A. SMITH, Appellant,

v.

BOEN-KOON & EGGE-CUMMINS CON-
STRUCTION CO., a joint venture consist-
ing of Koon Boen, Inc., and Cummins-Egge,
Inc., Appellee.

No. 257.

Supreme Court of Alaska.

Aug. 8, 1963.

Edward A. Merdes, McNealy, Merdes &
Camarot, Fairbanks, for appellant.

Mary Alice Miller, Collins & Clasby,
Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND
and AREND, JJ.

AREND, Justice.

This is an action to recover damages for
injuries to the plaintiff, alleged to have
been caused by defendant's negligence. The
court, sitting without a jury, found the
plaintiff guilty of contributory negligence,
and so gave judgment for the defendant.
The plaintiff appeals.

At about 8:30 a. m., on September 13,
1960, the plaintiff, who was staying at the
house of a married daughter on Ash Street,
left the house by the front door with her
husband and her daughter in the daughter's
car to drive to downtown Fairbanks. The
day was partially cloudy and the ground was
wet and muddy from the rains of several
previous days. Ash Street was under con-
struction at the time and the defendant
was getting ready to pour the sidewalk
on Ash Street and adjoining Kennicott
Avenue; so the daughter had been parking
her car in a sort of alleyway at the rear
and to the west of the house. As the daugh-
ter's house had no back entrance and her
backyard was fenced in with a gateway only
at the side, it was necessary either to go
through the neighbor's yard to get to the
car or to take a more circuitous route
along the unfinished sidewalk on Ash Street
to Kennicott Avenue and then proceed
westerly along Kennicott to the alleyway.

To avoid having to walk across the neigh-
bors' backyards through long grass and
over muddy ground, the plaintiff took what
she considered to be the safer route along
the unfinished sidewalks. Her husband ac-
companied her, but the daughter took the
shortcut after counseling the older folks to
go by the longer way.

The defendant's work had progressed to
the point where the dirt had been compact-
ed into a subsurface for the sidewalk along
Ash Street and Kennicott Avenue. This
subsurface was lined by two-by-four forms,
set four feet apart, into which the concrete
would be poured. Every twenty feet along
the length of the forms there was a two-

by-four crosspiece or spreader. Inside the forms and about three-tenths of a foot (3.6 inches) from the form extending along the adjacent property lines was strung a green nylon cord which was on a level with the top surface of the forms and spreaders, was tied onto the spreaders, and was used to line up the forms. The cord was described as being a little larger than the lead in a pencil and of such strength that it could not be broken by hand. Steel pins, two and a half feet long, were used to straighten the forms wherever they were out of line due to warping of a two-by-four or some other cause. The pins were driven into the ground beside the form to a depth that left about eight to ten inches of the pin protruding above the form. There were no warning signs posted or watchmen stationed in the area and no barricades set up against use by the public of the subsurface within the forms as a sidewalk; although there were some barricades out in the streets.

After leaving the house on the morning in question, the plaintiff and her husband walked inside the sidewalk forms down Ash Street some 100 feet to its intersection with Kennicott Avenue, thence east on Kennicott for a distance of about ninety feet to a point which was twenty-five to thirty feet from the east end of the project. Here the plaintiff stepped out of the unfinished sidewalk into the adjoining backyard in order to cross over to her daughter's car. In doing so she stepped over the two-by-four form at her right side with her right foot and, according to her story, as she brought her left foot over this form "the toe of it caught in a tight green nylon cord which was placed just slightly inside the plank above the sidewalk about 8″ – 10″ and which I [the plaintiff] was not able to see and which was not visible to me at any time until I saw it after I had tripped over." The plaintiff fell hard to the ground and received the injuries for which she is seeking damages.

The record is silent as to the position or actions of the husband at the time the plaintiff tripped and fell, although the plaintiff stated that her husband saw her fall. The daughter testified that she saw her mother fall and rushed to her aid. She also stated that the object over which her mother tripped was a dark green cord not readily visible at the time. Robert Brooks, the field inspector for the City of Fairbanks on this paving project of the defendant company, testified as a witness for the plaintiff that on the evening before the accident he remembered that the nylon lines were left up after the workmen had quit for the day. So he returned to the project about 7:00 or 8:00 p. m. and pulled up the lines strung along Ash and Kennicott, except at the place of the accident where he did not see any line that evening. Not until the next morning, when the plaintiff's daughter reported the accident to him and he went over to inspect the area did he see and tear up that part of the cord over which the plaintiff had tripped about an hour earlier.

It is to be noted that the plaintiff, though sixty-nine years of age at the time of the accident, had good eyesight and was an alert and physically active person. She first became cognizant in August, 1960, of the street and sidewalk construction work going on in the area of her daughter's home and seems to have observed and become quite familiar with the details of the work being done by the defendant preparatory to the paving of the sidewalks on Ash and Kennicott.

Other facts worthy of note are these: The first person to whom plaintiff's daughter reported the accident was the witness Brooks. She had known him and his family as acquaintances for several years and knew that he had something to do with the paving project on her streets. The plaintiff and her daughter both gave testimony, the plaintiff by deposition only, to the effect that the plaintiff had never been seriously ill before the accident. Testimony of her own doctors, on the other hand, disclosed that for a period of several years prior to the accident she had been treated for hypertension, arteriosclerosis, recurrent bouts of sinusitis

and respiratory infections and hypothyroidism, that she had had an arthritic condition of the spine for many years, and that just a month prior to her fall on Kennicott Avenue she had had a stroke involving temporary paralysis of one side of her body which required hospitalization. When asked whether the green nylon cord extended the full length of the sidewalk forms on Kennicott Avenue, the plaintiff's daughter answered that she presumed it did, her testimony being as follows:

"Q. Do you know how far along the—the walk on Kennicott, it extended? Did it go clear from the alleyway to the corner?

"A. I presume it went to the end of sidewalk, to the stake.

"Q. You mean to the—to the end of the sidewalk at Ash Street?

"A. Well. I mean, well—where the curb went along toi [sic]—from corner to corner, I presume.

"Q. No further questions.

"A. I didn't look at that."

From the facts as we have related them above, the trial court found that the defendant was negligent in permitting the nylon cord to remain in place, unguarded, but denied the plaintiff any recovery for her injuries because of contributory negligence on her part in failing to exercise reasonable care for her own safety.

While the plaintiff contends in her opening brief that the trial court erred as **a**

matter of law in finding her guilty of contributory negligence, she has wholly failed to provide us with any specifications of error or questions presented for review as required by Supreme Ct.R. 11(a) (5) and (6).[1] The defendant, without voicing any objection to these obvious defects in the plaintiff's brief, proceeded to set forth what it considers to be three questions presented for review, thus taking on an assignment it was not required to assume under the rule.[2] We are at a loss to understand why counsel for both sides in this case, who are all able and experienced attorneys in appellate matters, have so completely ignored the plain dictates of the rule.

On several occasions in the past we have refused to consider issues not properly raised in the appellant's brief;[3] however, we shall not do that in this case because the plaintiff did raise an issue after a fashion in her "Statement of Points," which reads:

"The Court, sitting without a jury, erred in finding that the Plaintiff was guilty of contributory negligence and said alleged contributory negligence was the cause of Plaintiff's injuries."

This still does not tell us which finding or findings are being challenged by the plaintiff. So we have to ferret them out for ourselves, if any there be. Searching through the plaintiff's opening brief, we find on page nine thereof her argument that there is no testimony or evidence in the

---

1. We quote from Supreme Ct.R. 11(a) (5) and (6) the following provisions:

"(a) * * * [Appellant's] brief shall contain in the order here stated the following:

* * * * *

"(5) The questions presented for review, with each question being set forth separately and without unnecessary detail.

"(6) A specification of errors relied upon which shall be numbered and shall set out separately and particularly each error intended to be urged. * * * When findings are specified as error, the specification shall state as particularly as may be wherein the findings of fact and con-

clusions of law are alleged to be erroneous. * * * "

2. Subdivision (b) of Supreme Ct.R. 11 provides in part that "the appellee's brief shall be of like character with that required of the appellant, except that no specification of errors and no statement of questions presented shall be required * * *."

3. Parks v. Brown, Opinion No. 57, 368 P. 2d 220, 222 (Alaska 1962); McLemore v. Harris, Opinion No. 102, 374 P.2d 410, 412 (Alaska 1962); Crume v. Crume, Opinion No. 124, 378 P.2d 183, 185 (Alaska 1963).

record to support finding No. 5 in which the trial court stated:

"In going along Kennicott Street, the plaintiff, just before her fall, had stepped over at least four of the spreaders and had walked 90 feet along the nylon cord which also crossed the spreaders."

Later in her reply brief the plaintiff reiterates her claim that there was no evidence to support finding No. 5 and adds that there was likewise no evidence to support finding No. 7. The latter finding reads as follows:

"The plaintiff was negligent in that, exercising reasonable care for her own safety, she saw or should have seen the cord, and should have stepped over it."

■ Under Civ.R. 52(a) in a case tried by the court without a jury, the court's findings are reviewable on appeal but may not be set aside unless clearly erroneous, giving due regard to the trial court's opportunity to judge the credibility of the witnesses.[4] Findings of fact Nos. 5 and 7 indicate that the trial judge did not believe the testimony of Robert Brooks that he had removed the nylon cord along Kennicott Avenue the night before the accident except in the vicinity of the spot where the accident occurred. Nor did he believe the plaintiff and her daughter in their testimony that the green nylon cord was not readily visible when the plaintiff stumbled over it and fell. It was the province of the trier of the facts to judge the credibility of the witnesses and we may reverse his decision only if we find it to be clearly erroneous.[5] We fail to find any

such clear error in the court's findings as would require us to set them aside.

It is true that the plaintiff's own testimony was given entirely by deposition, including her statement that the green nylon cord was not visible when she tripped on it. In such a case we are in as favorable a position as the trial judge to determine credibility since the witness' demeanor is not involved.[6] Even so, upon taking into consideration the entire testimony of the plaintiff and all of the other facts and circumstances appearing in the record, we cannot say that there are other more rational and irresistible inferences to be drawn from the facts of this case than those expressed in findings Nos. 5 and 7 of the trial judge.

■ Counsel for plaintiff seems to be of the opinion that the provisions of Rule 52 (a), which we have discussed above, come into play only when there is evidence of one party to be weighed against evidence of the other. Counsel says, in effect, that since the plaintiff had proved negligence on the part of the defendant and the defendant introduced no evidence of contributory negligence, the court should have found for the plaintiff. That argument overlooks the rule of law that a defendant who has pleaded the defense of contributory negligence may establish the defense by the plaintiff's own evidence or by inferences favorable to the defendant which appear from the presentation of the plaintiff's case either on direct or cross-examination.[7]

Having found no clear error in the findings of the trial court, we affirm the judgment appealed from.

4. Chirikoff Island Cattle Corp. v. Robinette, Opinion No. 85, 372 P.2d 791, 792–794 (Alaska 1962).

5. Nordin v. Zimmer, Opinion No. 96, 373 P.2d 738, 742 (Alaska 1962); In re Kraft's Estate, Opinion No. 103, 374 P.2d 413, 416 (Alaska 1962).

6. See Orvis v. Higgins, 180 F.2d 537, 539 (2d Cir. 1950), cert. denied 340 U.S. 810, 71 S.Ct. 37, 95 L.Ed. 595 (1950).

7. Bellows v. City and County of San Francisco, 106 Cal.App.2d 57, 234 P.2d 729, 730 (1951); Johnston v. Vukelic, 67 Wyo. 1, 213 P.2d 925, 930 (1950); 2 Harper and James, Torts § 22.11, at 1236 (1956).