Frank A. WILSON, Sr., and Clara Wilson,
Appellants,

v.

Andrea M. MITCHELL, Appellee.

No. 578.

Supreme Court of Alaska.

Sept. 27, 1965.

R. J. Annis, Robertson, Monagle, Eastaugh & Annis, Juneau, for appellants.

Shirley F. Meuwissen, Stabler, Gregg & Meuwissen, Juneau, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

This is a dispute between the paternal grandparents and the mother of a four-year old child over the child's custody. The trial court awarded custody to the mother and the grandparents have appealed.

The mother, Andrea Wilson Mitchell, married Frank Wilson in 1959 when she was about 16 years of age. A daughter, Clara Lynne Wilson, was born of this marriage in July 1961. The parties were divorced in September 1963, with custody of Clara Lynne being awarded to the child's father.

Andrea married her present husband, William Mitchell, on October 14, 1963. In July 1964 Andrea's former husband Frank Wilson, was killed in an automobile accident.

From the time that Frank and Andrea were divorced their daughter, Clara Lynne, was actually cared for and was in the physical custody of Frank's parents, the appellants in this case. In August 1964 the appellants filed a petition for the adoption of Clara Lynne, and in October 1964

Andrea filed a motion to modify the divorce decree to award her custody of the child. After a hearing, the trial court entered an order placing:

> [T]he full care, custody and control of Clara Lynne Wilson in her mother, Andrea M. Mitchell, subject to the protective custody of the Alaska Department of Public Welfare until further order of this Court with said Department to make periodic reports in writing to the Court as to the welfare and well-being of Clara Lynne Wilson.

Appellants' petition for adoption was dismissed without prejudice.

Appellants contend that the court erred in granting custody of the child to Andrea on the ground that the evidence showed she was unfit to have custody and that the child's welfare required that she remain with the appellants. The evidence principally relied upon by appellants to sustain their contention may be summarized as follows:

(1) In the 1963 divorce action a default judgment of divorce was entered against Andrea, since she had made no appearance. Frank Wilson testified in support of his complaint for divorce, which was based on incompatibility between the parties, that when he would come home at night after driving a cab the baby, Clara Lynne, would be wet and hungry; that Andrea didn't want to stay home and take care of the baby; and that she seemed to have little interest in the baby because she made little effort to come and see her while Frank and Andrea were separated prior to their divorce.

(2) Andrea admittedly committed an act of adultery with William Mitchell, her present husband, in 1962 while she was still married to and living with her first husband, Frank Wilson. In 1963 Andrea and William Mitchell lived together in an unmarried state for about two and one-half months prior to the divorce between Andrea and Frank Wilson but during the period in which they were separated

(3) Mrs. Clara Wilson, one of the appellants and Clara Lynne's paternal grandmother, is 44 years old. She testified that she and her husband loved their 'granddaughter, Clara Lynne, that they had cared for her since she was seven months old, that they have a good home and sufficient means to provide the care that the child needs, and that they do not drink. It could be inferred from Mrs. Wilson's testimony that she and her husband lived a normal, well-adjusted life, and that Clara Lynne's welfare would be promoted if she remained with them.

Mrs. Wilson also testified that Andrea visited Clara Lynne only about ten times between January 1962 and the time this controversy arose in the fall of 1964; that during that time Andrea had written to Clara Lynne only once, on her third birthday, when she sent her a card and a small gift; and that Andrea had written to Mrs. Wilson on only two occasions. Mrs. Wilson described Andrea as being very nervous, and that she was happy and content as long as she got everything her way, but would become moody and sulky if anything went against her and she didn't get her way. It was Mrs. Wilson's opinion that Andrea was not fit to take care of the child because she liked to go out nights—that she and her present husband were "night people."

(4) Mrs. Albert Jorgenson lived in the same apartment house with Andrea when she was married to Frank Wilson and when Clara Lynne was an infant. She testified that one day Andrea, in speaking of Clara Lynne, had called her a bitch or a bastard, had said that she wanted nothing to do with the child, and wanted to be free of her so that she could have the freedom due her.

(5) Andrea's present husband, William Mitchell, works as a musician at a nightclub called the Dreamland and earns $180 a week. His hours of work are from 10:30 p. m. to 3:00 or 4:00 a. m. the following day.

It was brought out during the examination of Mitchell, and also during examination of Andrea, that he had associated and

played in the band with a man who had a criminal record and who used narcotics; that Mitchell had pleaded guilty to a charge of carrying a concealed weapon in 1963 and had been sentenced to 120 days in jail, with 60 days suspended; that while in jail he had lied to the District Magistrate by writing to him saying that he wanted to get out of jail in order to marry Andrea with whom he had been going for two years, when in fact he had not been going with her that length of time; that when he was a boy of 13 he had been hit by a truck and suffered a head injury and for about three years thereafter suffered from headaches, extreme nervousness and loss of appetite; that he used to have a temper and would break drum sticks and hit the wall with his hands and throw his clothes when angry; that right after his marriage to Andrea, he had been jealous of her because he wanted all her attention; and that during a recess at the hearing of this case, he had shown anger toward appellants' counsel and was later reprimanded for this by the trial judge.

(6) On behalf of the appellants there was introduced in evidence a letter from Andrea to Mrs. Clara Wilson, dated July 2, 1964. Andrea, in speaking of her daughter, Clara Lynne, said in part:

You folks probably think I'm disgraceful for not writing or anything but I really do still care a lot for her but I know you're taking real good care of her & that I need not worry about her! I haven't forgotten her like it might seem but decided to leave well enough alone, if you know what I mean. I don't want to start ill-feelings if I can help it so I just decided to stay out of the picture for her sake. It would cause her a lot of grief to be tossed around between 2 families! I'd rather take the suffering of not seeing or having her than to see her torn between 2 parents! I realized that the fault was greatly mine so I decided it was best to let Frankie have custody! I know he thinks I don't care for her

because I never came to see her or tried to fight for her but I guess you might say, I'm punishing myself for all the wrong I've done! It's too late now to have a guilty conscience so I'd like to save her a little suffering broken families have & have her remain in a home she's happy & use to in! I guess you know it's not easy to just toss your child aside & forget about her. I think about her a lot & often long to hold her again but it's my punishment & I hope to be forgiven someday! So I at least wanted you & dad to know that I truly do Love her & her happiness means more to me!

The evidence summarized above is that chiefly relied upon by appellants in support of their claim for custody of Clara Lynne. But there is also other evidence which the judge had to consider, which tended to support Andrea's contention that she was a fit mother for her daughter and that if she were to exercise custody the child's welfare would not be adversely affected.

Andrea testified that she had relinquished custody to her first husband, Frank Wilson, at the time of the divorce because he had convinced her that her act of adultery with Mitchell would "really get" her; that she didn't visit the child often because of the "coldness" of the appellants and the fact that Clara Lynne would get upset; that her present husband, William Mitchell, is now more mature and more responsible than he was in 1963; that Mitchell had no drinking problem; that she and Mitchell are religious people and read a prayer out of the Baha'i Bible every day; that she and Mitchell have ample room in their apartment to take care of Clara Lynne; that she usually remains at home at night while Mitchell is playing with the band at Dreamland Bar, but on occasions has gone to the Dreamland to wait for Mitchell to get through work; and that she loves her daughter, Clara Lynne.

William Mitchell testified that he had been a musician since he was 16 years old and was rated among the top six drummers

in the Pacific Northwest; that during the past few years he had changed and had learned that he wasn't the big shot he had thought he was; that he didn't drink appreciably; that he and Andrea had a beautiful marriage; and that he wanted to raise Clara Lynne as his own child and could give her the love and affection that a father could give to a child of such tender years.

There was testimony from other witnesses to the effect that the Mitchell's home was happy, clean and neat; that Andrea was a good cook; that when Andrea had been seen at the Dreamland where her husband worked she had conducted herself normally as a lady should; and that Mitchell was an exceptionally good father to Andrea's child and that Andrea was a fit person to have custody of Clara Lynne.

Where there is a controversy between a parent and grandparents over the custody of a child, we have held that:

> [The] parent is entitled to a preference over the grandparents, unless it is clearly shown that the parent is unfit for the trust, or that the welfare of the child requires it to be in the custody of the grandparents.[1]

The trial judge concluded that there had been no clear showing of unfitness on Andrea's part or that Clara Lynne's welfare required that she be in appellants' custody. We cannot say that the judge was mistaken. The evidence as a whole tells the story of a young girl who was married and had a child before she was old and mature enough to adjust herself easily to the responsibilities of marriage and parenthood but who, as time passed, has given

every indication of growing into mature adulthood with a realization of what marriage and parenthood require of her.

The trial judge saw and heard the witnesses; we did not. We are required to give due regard to his opportunity to judge the witnesses' credibility.[2] Under the evidence the judge had a rational basis for concluding that the welfare of Clara Lynne would not be adversely affected if she were given to her mother to rear and that the mother, Andrea Mitchell, was a fit person to have custody of her child.

The lower court's orders modifying the divorce decree and dismissing appellant's petition for adoption are affirmed.

---

1. Hickey v. Bell, 391 P.2d 447, 448 (Alaska 1964).

2. Civ.R. 52(a) provides in part:
   Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Monsma v. Williams, 385 P.2d 107, 111 (Alaska 1963); Smith v. Boen-Koon & Egge-Cummins Constr. Co., 384 P.2d 283, 286 (Alaska 1963); In re Kraft's Estate, 374 P.2d 413, 416 (Alaska 1962); Nordin v. Zimmer, 373 P.2d 738, 742 (Alaska 1962); Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 794 (Alaska 1962).