Fern PALFY, Appellant,

v.

Julian C. RICE, Appellee.

Julian C. RICE, Cross-Appellant,

v.

Fern PALFY, Cross-Appellee.

Nos. 1095, 1114.

Supreme Court of Alaska.

Aug. 14, 1970.

Warren A. Taylor, Fairbanks, for appellant.

Edward A. Merdes, of Merdes Schaible, Staley & DeLisio, Fairbanks, for appellee.

Before BONEY, C. J., DIMOND, RABINOWITZ and CONNOR, JJ., and STEWART, Superior Court Judge.

## OPINION

DIMOND, Justice.

Mrs. Fern Palfy brought this action against Julian Rice to recover $60,000, representing two $30,000 loans made by Mrs. Palfy to business enterprises represented by Rice. The case was tried by the court without a jury. Judgment was entered in Rice's favor, and Mrs. Palfy brought this appeal.

A cross-appeal was taken by Rice, confined solely to the issue of the attorney's fees allowed by the superior court.

*The Trucking Loan.*

In March 1962 Rice obtained from Mrs. Palfy a $30,000 loan for a trucking business, the Alaska Valdez Transport Company,[1] which Rice represented as the company's attorney. A promissory note for that amount, together with interest, was given to Mrs. Palfy. It was signed by Tom Jatzeck, individually and as president of A.V.T. The loan was secured by a chattel mortgage on certain trucking equipment of A.V.T.

The business did not meet with success and the note was not paid. Mrs. Palfy commenced foreclosure proceedings with

---

1. Alaska Valdez Trucking Company will be referred to in the opinion as A.V.T.

respect to the chattel mortgage and later abandoned them. Subsequently, A.V.T. assigned to Mrs. Palfy its operating rights from the Interstate Commerce Commission and the Alaska Public Service Commission, and transferred certain of its property to Mrs. Palfy.

Mrs. Palfy sued Rice, rather than A.V.T., for the $30,000. The theory of her action was misrepresentation; she alleged that Rice, her attorney, had induced her to make the $30,000 loan by misrepresenting the solvency and financial condition of A.V.T. On this point the trial judge made these particular findings:

> The Court further finds that the relationship of attorney and client between the Defendant Rice and the Plaintiffs is of no importance relating to the AVT transaction, since the Plaintiffs were fully advised that Defendant Rice represented AVT and because the loan in regard thereto was made to AVT, and was at the time of making of said loan and shortly thereafter fully secured by the documents hereinbefore referred to and the property of AVT. Furthermore, there was no evidence whatever of bad faith on the part of Defendant Rice and that Defendant received no personal benefit or gain from said loan as is evidenced by Exhibits LL and 000. The Court finds that Defendant made no untrue statements of fact to plaintiff. I find there was no fraud, deceit or misrepresentation on the part of the defendant in this action. The Plaintiff entered the transaction freely and with an understanding of the nature and extent of the financial problems AVT was having at the time. I find the Defendant acted fairly with AVT and the Plaintiff in all matters involved in this Count.

> \*    \*    \*    \*    \*    \*

> The Court further finds from the uncontradicted evidence that Mr. Rice did not act in a fiduciary relationship with the Plaintiffs and fully advised the Plaintiffs of his representation of AVT and did further fully advise the Plaintiffs that said AVT was in financial difficulty and that AVT needed money to pay current obligations and that said loan of $30,000.00 could be secured by the property and rights of AVT. The Court specifically finds that there is no evidence that the Defendant, Julian C. Rice, was aware of any fact contrary to the representations made to the Plaintiffs in connection with the loan of $30,000.00 to AVT and Thomas Jatzeck.

As to this aspect of the A.V.T. loan, Mrs. Palfy asserts that the trial judge erred in failing to reach the conclusion that the loan transaction was conducted in an attorney-client relationship, and in not finding that Rice, as Mrs. Palfy's attorney, had breached his fiduciary duty of dealing with her with the utmost good faith and honesty.

■ We accept the legal proposition urged by Mrs. Palfy, that an attorney has a duty in dealing with his client to exercise the utmost good faith, integrity, fairness, and fidelity, and that business dealings between an attorney and his client are subject to close scrutiny by the courts when a client alleges a breach of the fiduciary relationship by the attorney. This is indeed the law.[2] The question here is whether an attorney-client relation existed between Mrs. Palfy and Rice with respect to the A.V.T. transaction and if so, whether Rice violated the standard of conduct expected of an attorney in these circumstances.

Rice acknowledged that between January 1960 and March 1962 he had done some legal work for Mrs. Palfy's husband, such as handling real estate transactions and collections. He had also probated the estate of Mr. Palfy's first wife and had advised him with regard to a tax assessment. At the time Rice obtained the $30,-

2. Littleton v. Kincaid, 179 F.2d 848, 857–858 (4th Cir. 1950) ; McCargo v. Steele, 160 F.Supp. 7, 18 (W.D.Ark.1958), aff'd 260 F.2d 753 (8th Cir. 1958) ; United States v. Stringer, 124 F.Supp. 705, 714 (D.Alaska 1954), rev'd on other grounds, 233 F.2d 947 (9th Cir. 1956).

000 loan from Mrs. Palfy for the A.V.T. enterprise, he had in his possession a check in the amount of $30,000 from Dr. Weston, representing partial payment of a debt owing from Weston to the Palfys. Rice deposited Dr. Weston's check, and Mrs. Palfy sent him another check for $30,000 as a loan for A.V.T. At the time Rice talked to Mrs. Palfy on the telephone about the $30,000 loan, he made it clear to her that he was representing A.V.T. Mrs. Palfy testified to this, as did Rice.

■ The findings of a trial court will not be disturbed on appeal unless they are clearly erroneous.[3] A finding is not clearly erroneous unless from a review of the entire record we are left with a "definite and firm conviction that a mistake has been made."[4]

■ Appellant in this case has failed to point out where the findings of the superior court are clearly erroneous, and our independent review of the record has not left us with a definite and firm conviction that a mistake has been made. Appellant points to evidence and testimony, particularly that of Mrs. Palfy, which could tend to show that Mrs. Palfy thought that Rice was acting as her attorney. However, there was other evidence, relied upon by the superior court in making its findings, tending to show that Rice was not acting as her attorney. This is exactly the type of situation in which the "clearly erroneous" rule is designed to operate. Where there is conflicting testimony, the trial court is in a better position than we are to evaluate and resolve the conflict in view of the trial court's opportunity to hear and observe the witnesses in person and judge their credibility. We do not have this opportunity. That is why we shall not set aside a trial judge's findings except when they are "clearly erroneous."[5]

In addition to finding that appellant and appellee were not in a fiduciary relationship, the superior court found that the presence or absence of a fiduciary relationship was not important, because appellee had made a full and fair disclosure of A.V.T.'s financial condition to appellant, and appellee acted fairly and in good faith throughout the transaction. Again, appellant has failed to point out where this finding of the superior court is clearly erroneous.

Appellee made it clear to Mrs. Palfy that he was representing A.V.T. There was testimony indicating that appellee consulted an accountant about A.V.T.'s financial condition and that he conveyed

---

3. Civ.R. 52(a); State v. Phillips, 470 P.2d 266, 268 (Alaska 1970); Paskvan v. Mesich, 455 P.2d 229, 232 (Alaska 1969); Knox v. Pickles, 451 P.2d 347, 349 (Alaska 1969); Anchorage Centennial Dev. Co. v. Van Wormer & Rodrigues, Inc., 443 P.2d 596, 597 (Alaska 1968); Associated Eng'rs & Con. v. H & W Constr. Co., 438 P.2d 224, 228 (Alaska 1968); Stansberry v. Manson, 420 P.2d 449, 450 (Alaska 1966); Mercer v. Yutan Constr. Co., 420 P.2d 323, 326 n. 8 (Alaska 1966); Kenai Power Corp. v. Strandberg, 415 P.2d 659, 660 (Alaska 1966); Pearson v. Fairbanks Publishing Co., 413 P.2d 711, 715 (Alaska 1966); Stephenson v. Ketchikan Spruce Mills, Inc., 412 P.2d 496, 499 (Alaska 1966); Gilbert v. Sexton, 401 P.2d 300, 302 (Alaska 1965); Herning v. Wigger, 398 P.2d 1002, 1005 (Alaska 1965); Rizo v. Macbeth, 398 P.2d 209, 212 (Alaska 1965); Hamilton v. Lotto, 397 P.2d 980, 982 (Alaska 1965); Williams v. DeLay, 395 P.2d 839, 845 (Alaska 1964); Ogden v. State, 395 P.2d 371 (Alaska 1964); Preferred Gen. Agency of Alaska, Inc. v. Raffetto, 391 P.2d 951, 952–953 (Alaska 1964); Steward v. City of Anchorage, 391 P.2d 730, 731 (Alaska 1964); Monsma v. Williams, 385 P.2d 107, 110 (Alaska 1963); Smith v. Boen-Koon & Egge-Cummins Constr. Co., 384 P.2d 283, 286 (Alaska 1963); George v. Willman, 379 P.2d 103, 106 (Alaska 1963); In re Kraft's Estate, 374 P.2d 413, 416 (Alaska 1962); Nordin v. Zimmer, 373 P.2d 738, 742 (Alaska 1962); Chirikoff Island Cattle Corp. v. Robinette, 372 P.2d 791, 792 (Alaska 1962).

4. State v. Phillips, 470 P.2d 266 (Alaska, June 5, 1970); Steward v. City of Anchorage, 391 P.2d 730, 731 (Alaska 1964).

5. State v. Phillips, *supra* n. 4; Fairbanks Publishing Co. v. Pitka, 445 P.2d 685, 687 (Alaska 1968).

the accountant's analysis to Mrs. Palfy. The loan was secured by a chattel mortgage. When it appeared that Mrs. Palfy's investment might be in jeopardy because of the failure of the trucking business, A.V.T. conveyed some of its property to Mrs. Palfy and, in addition, assigned its Interstate Commerce Commission and Alaska Public Service Commission operating rights to Mrs. Palfy.

This evidence is consistent with the findings of the superior court. To the extent that there is evidence in the record which conflicts with or detracts from any of this evidence, the superior court resolved the conflict in favor of appellee. From our review of the record, we cannot say that there is a clear case of the trial judge having made a mistake.

*The Fisheries Loan.*

In the Spring of 1962 Rice requested and obtained from Mrs. Palfy a loan of $30,000 to start a fisheries operation in Valdez. Rice had several partners in the fisheries venture, including his law partner, Mr. Emmal, and Mr. Jatzeck of A.V.T. The partnership was named Prince William Sound Fisheries, and will be referred to in this opinion as the Partnership.

In May 1962, the Partnership entered into a contract with the First Bank of Valdez for the purchase of a cannery building, including fixtures and equipment. Pursuant to this agreement, the bank relinquished its claim to real property and tidelands surrounding the building which might subsequently become available for purchase from the United States or the state of Alaska. The Partnership made improvements and repairs to their newly purchased building, but due to unforeseeable economic conditions the business failed.

Negotiations were undertaken with Mrs. Palfy concerning the $30,000 which she had loaned. As a result of these negotiations Mrs. Palfy executed an agreement releasing Rice from his obligation to repay the loan. In return Rice assigned to Mrs. Palfy all rights he had in the Partnership's contract with the First Bank of Valdez and all rights he had in the cannery building, its equipment and fixtures.

Mrs. Palfy executed this agreement on the advice of Mr. Emmal, then acting as her counsel. Rice and Emmal had previously dissolved their law partnership. Emmal and Jatzeck had previously transferred their interests in the fisheries venture to Rice in consideration for his assuming the debts. However, apparently to make certain that she had obtained all of the Partnership's interest in the contract and the cannery, Mrs. Palfy subsequently obtained from each of the members of the Partnership releases identical to that entered into with Rice.

The cannery and its equipment were subsequently destroyed by the earthquake and tidal wave of 1964. Mrs. Palfy received other tidelands from the state based upon prior use as a result of alleging under oath that she had title to the cannery property. To substantiate her claim Mrs. Palfy used the release agreements she had obtained from Rice and the other members of the Partnership. Appellant also used the release agreements to establish her title in the destroyed cannery as the basis for a $181,000 Small Business Administration disaster loan.

Mrs. Palfy's contention here is that the release agreement she entered into with Rice was ineffective because it was not supported by consideration. The gist of her argument is that the rights transferred by Rice to her under the release agreement were valueless, that they could not reasonably be believed to be of value, and therefore that the release agreement should fail for insufficient consideration.

The superior court's findings with respect to this issue were:

11. The Court finds that said release was executed with consideration. The evidence shows:

A. That the Plaintiff received (1) assignment of partnership contract with

First Bank of Valdez (Exhibit 6) and (2) including inchoate title to tide land properties ultimately perfected by Fern Palfy, evidenced by use of Defendant's said contract in application for tide lands (Exhibit U–10) and a patent to said tide lands issued to the Plaintiff (Exhibit UU).

B. The Court finds that the Plaintiffs received the benefit of all improvements placed in said cannery building by the said partnership with the use of the money theretofore borrowed by the partnership from the Plaintiffs.

C. The Court finds that the Plaintiffs later caused to be recorded, the instruments heretofore referred to as agreements or releases and thereby did affirm their bargain and by and through the affirmance of their bargain did obtain the right to receive and did in fact receive a SBA disaster loan authorization in excess of $181,000.00 (the appraised value of the cannery) from the United States of America arising out of the earthquake of 1964 (Exhibit U–2).

12. The Court finds that all of said acts were done under the advice of counsel by the Plaintiffs, under Plaintiffs' sworn signature, and with full knowledge of the effect of their actions.

13. The Court therefore finds:

A. That the debt contracted for by the defendant with the plaintiffs was fully and fairly released;

B. That said release was supported by adequate consideration; and

C. That the Plaintiffs by their affirmance of said acts and deeds, and by the receipt of advantages therefrom, are forever estopped to deny the validity of said releases.

14. The Court further finds that the Plaintiffs by their affirmance of said acts and by receipt of the advantages arising out of said acts heretofore referred to make it impossible for the Court to return the parties to the status quo and Plaintiffs are therefore likewise forever estopped from asserting the invalidity of the execution of said releases.

Again, the resolution of this issue on appeal calls for application of the "clearly erroneous" standard of review.[6] Mrs. Palfy points to certain evidence and contends that it supports inferences which conflict with the findings of the superior court. To the extent that any conflict does exist with the evidence relied upon and enumerated by the superior court in its findings, the superior court resolved the conflict in favor of Rice. From our review of Mrs. Palfy's contentions and from our independent review of the record, we are unable to conclude that the superior court's findings are clearly erroneous. Therefore, the superior court did not commit reversible error in finding that the release agreement between Mrs. Palfy and Rice was supported by consideration.

*The Unexecuted Bill of Sale.*

Mrs. Palfy alleges that the superior court erred in refusing to admit into evidence an unexecuted bill of sale on which Rice was shown to be an officer of A.V.T.

While cross-examining Rice, Mrs. Palfy's counsel moved to introduce the unexecuted bill of sale into evidence. The bill of sale, undated except for the year 1962, is typed on "Rice and Emmal, Attorneys at Law" stationery, and contains unsigned signature blanks for Julian C. Rice indicated to be Secretary of A.V.T., and William B. Emmal indicated to be the Vice-President of A.V.T. When shown the bill of sale, Rice testified that he did not remember it.

Rice objected to entry of the bill of sale into evidence, and the objection was sustained. However, the court indicated that Mrs. Palfy could lay more foundation and then offer the bill of sale into evidence again. The court's suggestion was not followed, and no further effort was

6. Civ.R. 52(a) and cases cited in n. 3, 4 and 5.

made by Mrs. Palfy to place the bill of sale into evidence.

■ For evidence to be admissible, there must be proof of circumstances which make a material proposition asserted relevant to some issue in the case.[7] Where writings are concerned, "one of the commonest and most obvious of these circumstances on which relevancy may depend is the *authorship* of the writing."[8] [Emphasis added.]

■ Here the proposition asserted was that Rice was an officer of A.V.T., which was indicated by what appeared on the unexecuted bill of sale. But there was no showing of the identity of the author of this instrument, or how whoever did prepare it reached the conclusion that Rice was Secretary of A.V.T. The fact that the bill of sale was typed on "Rice and Emmal, Attorneys at Law" stationery is not sufficient to establish that it was authored by Rice, or by anyone else in a position to know whether Rice was an officer of A.V.T. The trial court was correct in ruling that the bill of sale was not admissible. Mrs. Palfy was given the opportunity to offer further proof of relevancy, but did not avail herself of it. There was no error here.

## The Deposition of William Jacobson.

■ At the trial appellant attempted to introduce into evidence a deposition of William Jacobson. Jacobson is an accountant who had worked on the books of A.V.T. at about the time Mr. Rice asked Mrs. Palfy to loan $30,000 to A.V.T. Jacobson testified in his deposition that at that time A.V.T. was operating at a loss. An objection to the introduction of the deposition was sustained on the ground that it had not been shown that the witness, Jacobson, was unavailable.

Civil Rule 26(d) provides:

*Use of Depositions.* At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

\* \* \* \* \* \*

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

[a] that the witness is dead; or

[b] that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

[c] that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or

[d] that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

[e] upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Appellant contends that subsection [e] of this rule, the "exceptional circumstances" provision, should have been employed by the superior court to allow the deposition into evidence.

The circumstances surrounding Jacobson's failure to be present at the trial are as follows: Mrs. Palfy's counsel stated that he had heard that Jacobson was not in town. After denying introduction of the deposition, the court gave counsel an opportunity to contact Jacobson. There was no showing of what efforts were made

---

7. Hartsfield v. Carolina Cas. Ins. Co., 451 P.2d 576, 578 (Alaska 1969).

8. McCormick, Evidence § 185, at 395 (1954).

to get in touch with Jacobson and ascertain his whereabouts. Apparently no attempt was made to subpoena him.

■ These are not "exceptional circumstances" which would permit use of the deposition under Civil Rule 26(d) (3) [e].[9] There was no showing of due diligence on the part of appellee in attempting to secure Jacobson's presence at the trial.[10] Furthermore, the testimony contained in the deposition was merely cumulative with other evidence concerning A.V.T.'s financial condition. There was no error in excluding the deposition.

*Attorney's Fees.*

The superior court, after finding for Rice on all counts, awarded him attorney's fees in the amount of $3,700. Rice moved for reconsideration of the award of attorney's fees, but this motion was denied. He then filed a cross-appeal raising only the issue of attorney's fees.

■ Since Rice prevailed, but did not recover a money judgment, the court was authorized to award him attorney's fees "in its discretion, in a reasonable amount."[11] As indicated by the rule, the matter of awarding attorney's fees is committed to the discretion of the trial court. We shall interfere with the exercise of that discretion only where it has been abused.[12] An abuse of discretion is established where it appears that the trial court's determination as to attorney's fees was manifestly unreasonable.[13]

■ This was a factually complex case which required extensive preparation. Rice's counsel had been engaged in preparation of the case for over three and one-half years. The liability that Rice was subjected to, had Mrs. Palfy prevailed, was considerable. Numerous depositions were taken. Trial of the case took three weeks. In addition, Rice was obliged to commence and litigate a separate action in the federal district court in order to discover certain of Mrs. Palfy's records.

In the light of these circumstances we believe that the $3,700 attorney's fees awarded was unreasonably low, and mani-

9. *See* Otis Elevator Co. v. McLaney, 406 P. 2d 7, 11 (Alaska 1965).

10. *See* Otis Elevator Co. v. McLaney, *supra* n. 9; McBride v. State, 368 P.2d 925, 927–928 (Alaska 1962) (diligence in attempting to locate a witness in a criminal trial).

11. Civ.R. 82(a) provides in part:
*Attorney's Fees.*
　(a) *Allowance to Prevailing Party as Costs.*
　(1) Unless the court, in its discretion, otherwise directs, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

ATTORNEY'S FEES IN AVERAGE CASES

| | | Contested | Without Trial | Non-Contested |
|---|---|---|---|---|
| First | $2,000 | 25% | 20% | 15% |
| Next | $3,000 | 20% | 15% | 12.5% |
| Next | $5,000 | 15% | 12.5% | 10% |
| Over | $10,000 | 10% | 7.5% | 5% |

Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount.

12. Connelly v. Peede, 459 P.2d 362 (Alaska 1969); Dale v. Greater Anchorage Area Borough, 439 P.2d 790, 793 (Alaska 1968); Beaulieu v. Elliott, 434 P.2d 665, 678–679 (Alaska 1967); Albritton v. Estate of Larson, 428 P.2d 379, 383 (Alaska 1967); McDonough v. Lee, 420 P.2d 459, 461–465 (Alaska 1966); Kenai Power Corp. v. Strandberg, 415 P.2d 659, 660–661 (Alaska 1966); Patrick v. Sedwick, 413 P.2d 169, 178–179 (Alaska 1966); M–B Contracting Co. v. Davis, 399 P.2d 433, 437 (Alaska 1965); Alaska State Housing Authority v. Vincent, 396 P.2d 531, 532 n. 1 (Alaska 1964); Buza v. Columbia Lumber Co., 395 P.2d 511, 514 (Alaska 1964); Preferred Gen. Agency of Alaska, Inc. v. Raffetto, 391 P.2d 951, 954 (Alaska 1964).

13. Froelicher v. Hadley, 442 P.2d 51, 53 (Alaska 1968).

festly so. There was an abuse of discretion in the amount awarded.[14]

The case is remanded to the superior court with direction to redetermine its award of attorney's fees to Julian Rice against Mrs. Palfy. In all other respects the judgment is affirmed.

14. *Cf.* American Serv., Inc. v. Tundra Inv. Co., Inc., 473 P.2d 614 (Alaska 1970).